May I have reserved two minutes? Yes, certainly. Thank you, your honor. I wasn't certain if that was a long-held victory sign for a two-minute request. That's where I hold my cigar. Could you speak up just a bit? Yes, I will. Thank you. May it please the court. With the government's concessions in this case, there remains, it appears, a single issue, and it's one of statutory construction involving Title 18 United States Code Section 924C3B. The question appears to be whether this court is bound by the holdings of the United States Supreme Court, United Sessions v. DiMaia, and the weight of other authority across the country to apply a categorical approach and not a fact-based or circumstantial-based approach to determine whether a Hobbs Act conspiracy is a predicate crime of violence under Section 924C3B. When Congress amended Section 924C in 1986, it directly adopted the specific language of Title 16B, that definition of crime of violence, into the 924C part of the Armed Career Criminal Act. Courts have held that construction of one guides the construction of the other. Lea Cole and DiMaia have specifically held that the categorical approach applies to the identical 28 words that are present in Section 16B and 924C3B. We have an interesting problem here, and I understand the thrust of your argument, but in fact, the categorical approach was a judicial construct, correct, as opposed to a statement of what the Supreme Court thought Congress intended. It was a construct meant to avoid certain constitutional problems, and it's certainly well within the constitutional issues. So the canon of like language reaches like results perhaps has not come up in this precise context before. Perhaps that is true, Your Honor. We'd go back to the idea of the categorical approach being a construct. I don't think it was designed to achieve a purpose. I think that the categorical approach was the focused interpretation, focused on the language of the statute, and what the statute's language itself required the court to do. I don't think they created it from whole cloth, and I don't think they were thinking about it as a... You would never accuse the Supreme Court of doing anything. So you don't think there's any difference between looking back to what happened years ago in a contemporaneous case where all of the issues are in the complaint against your particular defendant? And why should that be? I would suggest, Your Honor, that it's really a distinction without a difference because the language of the statute calls for it, and the experience of Title 16B shows multiple instances where this language has been used in terms of determining whether a present case, not a past case, but one that's actively before the court qualifies as a crime of violence under that language. You would agree this circuit has not held that? I would agree with that, yes, Your Honor. But I do suggest that DiMaia expressly, in the majority opinion, that's adopted, at least by the Chief Justice, and I'm arguing that Justice Gorsuch adopted the portion of that... But he said the question was open. But he did, but he also adopted part one of Justice Kagan's opinion that applied the categorical approach, so he didn't undermine that part of it. But didn't he also say that the government had failed to present any argument on... Right, he said it's a waiver. Yes, well, waiver is a very live argument in this case as well, Your Honor. We won't get there just yet. We'll get there when we're done, but let's stick with DiMaia and what it means. Okay. But I think that Justice Kagan dealt with that in terms of whether or not it only had a backward approach look, or whether it could be used in a present case, and I think that she found that it was appropriate either way. Certainly, you now have at least two circuits, the 10th in Salas and the D.C. circuit in Ishutu, that have adopted the categorical approach in 924C3B cases. But in both of those cases, wasn't there a circuit precedent that had already concluded that, and therefore the question was whether DiMaia compelled a different result than... And our question is different, since we have no circuit precedent on the point. Well, Your Honor, I would point to the Court, to Taylor and Turner in this circuit. Turner, while it doesn't expressly discuss the topic, it's very clear, and I think it would be incorrect to suggest that it doesn't, adopt a categorical approach to determining whether a Hobbs Act conspiracy was a crime of violence under 924C3. It finds that it was. It utilized the residual clause with language that if you look at the underlying crime that was conspired to, and if that's violent, well then the conspiracy turns along. But could a properly instructed jury answer the question very well and get around any of the other problems which might exist? Well, Your Honor, we would suggest that, that in and of itself, the jury instruction, if the Court were to adopt the government's point of view, we think that it doesn't eliminate the vagueness in the language of 924C3B that would have to be presented independently to the jury for them to resolve. First, you'd need the elemental instructions on the underlying predicate offense. In this case, Hobbs Act conspiracy. Then you'd need to instruct the jury on the language of 924C3. And how do you deal with the language that the United States Supreme Court has time and time again says when you talk about an offense, it's the general offense. When you talk about by its nature, it means what, you know, the ordinary cases. But if you eliminate the ordinary case piece and turn your attention to the specific facts of the case before the Court, the Court said it was a two-pronged problem with the ordinary case being one of the troublesome prongs. And once that's gone, I'm trying to understand the difficulty of a jury just simply looking at the case before it and making that decision about violence and risk. Well, Your Honor, we'd agree that if it was in isolation, the evaluation of a substantial risk, juries do that all the time. But giving the question to juries doesn't take away the ordinary case language that's present in the statute the Court would have to interpret them on. So you're really shifting. You mean by its nature? Yes, the offense. The equivalent of the ordinary case? Yes, and also the word of offense that points to the statutory creation of the offense and the by its nature, which talks about. I want to go back to Judge Thompson's point because it seems to me that the government has an argument that, in fact, you're avoiding a Sixth Amendment problem in a contemporaneous case by submitting the issue to the jury and not having a judge take the issue away from a jury. What's your response to that? Four parts. First, if it is a question of law because of the ordinary case and categorical approach, then it's not a matter of fact. It's a question of law, so you're not taking anything away from the jury. That assumes the answer, so let's move on. It does. Constitutional avoidance, however, Your Honor. You've got constitutional problems in adopting the government's approach. First, what Justice Kagan pointed out, that you should interpret the identical language in the statute identically and consistently where it's found. That's one problem. But that's a canon of construction, and I do intend to ask the government about that, but there are exceptions to that canon. Yes. And another constitutional issue is that if you tell all of the people who are now sitting in prison that their 924c3 conviction, which was based on application of the categorical approach, that now they really had a right to a jury trial. In this circuit, you think we're going to have that problem when you've conceded that we've never so held? I think if you tell people from this circuit who have had those kinds of convictions, Mr. Douglas being one of them, that he was entitled to a jury trial on that issue... He wouldn't have pled guilty despite the overwhelming evidence against him? Your Honor... I'm just trying to understand your parade of horribles if we go down the path the government urges. Well, I think there's more than just those. I think if you take their approach, I think you've broadened the idea of what's a crime of violence to an almost absurd degree. For example, a crime might be illegally crossing the border. Well, that's not a crime of violence. Well, if you illegally cross the border with a gun, okay, then do you give that to a jury and say, well, there's a substantial risk that there could be harm to another person? I'm sorry, what's wrong with letting a jury decide that question? Well, I don't think 924C was intended to cut a wide swath among all of these other substantive offenses, which by themselves clearly are non-violent. But then when you introduce the gun, there's a prejudicial quality to that, but it's also almost impossible for the jury to distinguish if those are the facts that they have to evaluate. And it's not a fact-based approach if you isolate the gun aspect of this and get a determination without it. But no judge would instruct the jury that a mere presence of a gun determines this as a matter of law. But they would be given that evidence, and then they would be asked to evaluate whether there was a substantial risk of injury to another person or property by this alien who is illegally crossing the border with a gun. And I think it... The jury instruction would first be you have to make a determination as to whether the predicate crime is a crime of violence. Yes. They would be given the elements of that predicate crime. Yes. And then they would have some sort of instruction under 924C3, A and B, force clause, residual clause. And I'm suggesting that that residual clause has been interpreted with ordinary case and substantial risk, and that would have to be part of the instruction given to them. It doesn't take it out of it just to call it a jury question. I have a question. If we adopted your position, would that not open innumerable cases to being reconsidered where people say, well, I pled, and I made a mistake? Obviously, this was not... I think not, Your Honor, because I think the position I'm advocating has been the law, if not expressly stated. Certainly, the district courts all apply it that way. The way it has been since Taylor, I think that the government's asking this court to engage in a high degree of judicial activism to essentially change the interpretation of this statute that's been applied and in effect for a significant time. Thank you. Thank you, Your Honor. You have your two minutes. Good morning, Your Honors, and may it please the court. John Taddy for the United States, along with Benjamin Block from the U.S. Attorney's Office in Maine at counsel's table. As several of these courts' questions were indicating, context matters. And here, the context is that the Supreme Court has only applied the categorical approach to recidivist statutes, like the ACCA and Section 16B, as a saving construction to avoid practical and constitutional concerns. It has never applied the categorical approach to a statute like Section 924C3B, which requires a determination based on presently charged conduct of whether a defendant used or carried a firearm during and in relation to a crime of violence. The court didn't address the specific circumstances that exist for a statute like Section 924C3B. What my friend on the other side would like the court to do is to basically airlift Section 16B into 924C3B without considering the context, without considering the unique factors of how the text of Section 924C3B exists in the remaining statute, and without considering the very weighty practical and constitutional concerns that were the feature of categorical approach cases dating all the way back to the judicial construction of the categorical approach in Taylor in 1990, then carried over to the ACCA residual clause in James, and then applied by a four-judge plurality in DiMaia to say that a case-specific approach in that particular case was not viable. With respect to DiMaia, it's not correct to say that that court held that a categorical approach was not viable for any language like that exists in 16B. And Justice Kagan's plurality opinion in that particular section relied on four different factors. As I believe Judge Stahl noted, one of those factors was that the government had not raised that particular argument in that case. It had not advocated for a case-specific instruction, and therefore the court didn't deem it appropriate to consider it in that particular case. The second factor was those weighty constitutional concerns that would result from adopting a case-specific consideration. Justice Kagan didn't say that the doctrine of constitutional avoidance could not apply to save language like 16B's. She merely said that it would ping-pong the court from one constitutional problem to another because 16B in the criminal context is often applied to recidivist conduct. For example, legal reentry offenses like 1326B offenses. And in that context, it would give rise to the very real Sixth Amendment concern of increasing a defendant's statutory range as a result of factors that weren't before the jury. So therefore, constitutional avoidance could not serve as an interpretive tiebreaker, is what Justice Kagan wrote in that particular opinion. She also noted that the text as best read in that particular circumstance in her plurality supported a categorical approach. But as the Second Circuit wrote in its recent decision in Barrett, in which three judges found that a case-specific approach was possible for this particular statute, the text doesn't necessarily need to be best read to support a categorical approach or to support a case-specific approach. All that's required under the doctrine of constitutional avoidance is that it's a plausible interpretation or a reasonable interpretation. And as the government wrote in its brief, and as the Second Circuit held in Barrett, it is certainly a reasonable interpretation to look at the language of Section 924C holistically and the language of 924C3B specifically and find that it is amenable to a case-specific approach. And I'd like to... So when Justice Kagan said text as best read, you don't interpret that as part of the case holding? No, not in that particular circumstance. She was addressing, and if you look at the way that the breakdown of the opinion went in that case, Judge Thompson, only four judges signed on to that particular part of the opinion that said that the language was best read in that way. As the panel indicated, Justice Gorsuch did not join that portion of the opinion. He reserved for another day in which the government had properly argued that particular point as to whether the statute would be amenable to a saving construction like a case-specific approach, but did not join that portion of the opinion. And, of course, four justices dissented to the majority opinion in that case, striking down 16B. So, no, that section in which Justice Kagan wrote the statutory language was best read was not a holding of the court. It was only joined by four justices. Isn't 4 and 1 5? Excuse me? 4 and 1 5? 4 plus 1 is 5? No one else joined. Justice Gorsuch did not join that portion of the opinion, Your Honor. Okay. He wrote separately to say that he wasn't in agreement with Justice Kagan's plurality opinion there that this particular statute, 16B, was not amenable to a case-specific construction. But as I mentioned briefly before, the language, the text itself, if we can consider that for a moment, does support a case-specific application. My friend noted that the word offense suggests that a categorical approach is required. That's not what the Supreme Court has said in cases like Nijuan and Hayes. In both of those cases, the court adopted a case-specific reading of the term offense and said that it's capable of multiple constructions. The word involves also suggests a case-specific inquiry that looks at the facts of the offense. If you take a step back and look at the larger statutory framework, you look back at Section 924C1A, which talks about any person who, during and in relation to any crime of violence, uses or carries a firearm or, in furtherance of any such crime, possesses a firearm. That is a fact-based inquiry that's determined by a jury. There's no objection to that or there's no controversy over that in this case. In a 924C case, the jury is always instructed to determine whether or not the underlying offense, in this case a conspiracy to commit a Hobbs Act robbery, actually occurred if the defendant was guilty of the elements of that particular offense. Then the jury needs to make a determination of whether there was a firearm possessed in furtherance of that crime or if the person used or carried a firearm during and in relation to that crime. The additional element that would be required under a case-specific approach is rather than for a judge to make a categorical determination of whether every Hobbs Act conspiracy involves a substantial risk of physical force, the change would be that the jury would determine whether the offense, by its nature, involves a substantial risk of physical force. So you get around the Sixth Amendment issue simply by the judge instructing on the question? Yes, that's correct, Judge Stahl. Having said that, the government has come to this position lately, as I understand it, as these cases have evolved. What was your position earlier on this? Well, prior to DeMaio, the government's position was that 924C3B required a categorical approach. And the reason for that quite honestly is part of the sort of unavoidable creep that has occurred, starting with Taylor in 1990, of both the government and the courts assuming that the categorical approach applies to anything that sort of walks and talks and looks like the ACCA or the ACCA residual clause. We assumed that it applied to similar type language. We didn't have too many problems for a while because it seemed like most violent crimes were encapsulated within that categorical inquiry under the ordinary case approach. It crept over to the ACCA residual clause in James, and until DeMaio struck down 16B, and the court unequivocally and clearly stated that the ordinary case approach, when coupled with a risk assessment, is unconstitutional, required both the government and the courts to reevaluate their prior assumptions that the categorical approach applied to this language. That's what the Second Circuit did in Barrett. There the court did have binding precedent. Holding that 924C3B required a categorical approach. And nonetheless, in Barrett, three judges unanimously agreed that DeMaio was a complete game changer. And that is a long-winded answer to your question, Judge Stahl, is what required us to reevaluate our positions, to really take a critical look at Section 924C3B and how it worked and its mechanics. And we recognized that there is no reason to apply this prophylactic categorical approach that came up to address the practical problems of dealing with this. The Second Circuit also, sorry to interrupt you, but in truth I'm not buying much of it. The government made policy choices much earlier that it was willing to go along with the categorical approach. Now it is making a different policy choice. To me, the government's policy choices are less important than what Congress intended. The Second Circuit seemed to say, well, our law is that because conspirators basically agree to the elements of the underlying crime. As a matter of law, a conspiracy to do a Hobbs Act armed robbery will result in a finding that this is a crime of violence. I'm rather uncomfortable with that. It seems to be at tension with the notion that we will give this to the jury to decide. Your brief does not seem to espouse the Second Circuit view. I think there's a footnote where you say because it's fact-specific, it will have to go to the jury to make the determination. Is that the government's position here, and is that different from the government's position in the Second Circuit? The government's position here is that the Second Circuit's alternative holding that conspiracy to commit Hobbs Act robbery categorically qualifies as a crime of violence under Section 924C3B is not correct. The only viable construction of the statute is a case-specific construction. The statute quite simply can't have two different meanings at the end of the day. It either has to be required to have a case-specific construction, or it's required to have a categorical construction. The difference between 16B and 924C is, of course, that they're different statutes. And though the text of the residual clauses is the same, as we've been discussing, they have different contexts, they have different purposes. So let's explore the implications of the rule, which is contrary to the common statutory construction canon that like language should be interpreted in like manner. Let's assume that we are to adopt the point of view that you have. What are the limiting principles that we should articulate for why this canon does not apply here? I think there's at least two, Judge Lynch. One is, and I would encourage the court to consider, again, cases like Mijuan and Hayes, where the Supreme Court has said that like language, in that case, the definition of an offense, is capable of different interpretations based on the context that the particular language exists in. Two other cases, and these aren't cited in the brief, but I believe they're responsive to your question, and I'd be happy to submit a 28J after, are cases like Johnson 1, also known as Curtis Johnson, which deals with the definition of physical force, and Castleman. In Johnson 1, the Supreme Court said that physical force in the context of the Armed Criminal Act means violent force. And in the context of Castleman, for the definition of a misdemeanor crime of domestic violence, physical force did not require physical force. And the reason for that, as Justice Sotomayor articulated in her opinion in Castleman, was that the statutes have different purposes. They have different contexts. And to require the violent force felony requirement from Curtis Johnson and import it into the misdemeanor crime of domestic violence definition would totally obliterate the meaning of the statute and wasn't necessary whatsoever. So in terms of a limited construction, I would say context is the first consideration in determining whether or not like language is capable of different interpretation. And two, in this particular case, the doctrine of constitutional avoidance, which in many ways is a higher. I was going to ask you, does your outcome turn on the doctrine of constitutional avoidance? I wouldn't say that it necessarily turns on it, Judge Lips, but it's definitely a weighty factor in the government's favor here. We do believe that if you sort of cut out all of the assumptions about language that looks like the ACCA and consider the recidivist context, that the best reading of the 924C3B and, quite frankly, 16B language is a case-specific approach. But the doctrine of constitutional avoidance certainly pushes it over the edge because the Supreme Court has made it quite clear that otherwise an ordinary case approach is unconstitutional. And this Court would be required to strike down the statute if the statute is not amenable to a case-specific construction. And what the Supreme Court has said in terms of constitutional avoidance is that any reasonable interpretation is required. Okay, the two constitutional issues are the vagueness issue and the Sixth Amendment issue. And if we were to adopt your construction, we would avoid both of those? I would suggest a slightly different framing, Judge Lynch, which is that the Sixth Amendment issues are not in existence in the 924C context because it only deals with... But if we were to adopt the categorical approach in this context, would there be a possible Sixth Amendment problem? I don't think so. Under cases like Almendarez-Torres, for example, and Apprendi and Alleen, which say the fact of a prior conviction doesn't raise Sixth Amendment problems. So here I guess you have the fact of a present conviction, if I may finish answering that question. We don't have a prior conviction. We have a current conviction. But what underlies that, of course, is the entire sort of force of the contextual argument the government is making, which is that there's no reason to resort to this unnatural categorical construction. The Supreme Court has said time and again that the usual way that we make evaluations, like what offense involved a substantial risk or how much risk, or whether the government has proved its case beyond a reasonable doubt, for example, determinations like that are left to a jury. And there's no reason to resort to this unnatural, judge-made construction in this case. Thank you. Thank you. Mr. Billings. Thank you, Your Honor. Your Honor, it isn't just in prior cases and in DeMaya that the government has taken a position that categorical approach applies. They did it in this case. In the district court, they specifically said their counsel told the court that they agreed that the ordinary ---- Well, DeMaya hadn't been decided at that point. Once DeMaya came out, we realized that there was an issue here. Normally we would let the government change its position in light of a Supreme Court case. But that court case, the ruling authority and judge by Judge Roberts making five, utilized the categorical approach, and it didn't provide a basis for saying that that notion was under challenge. In fact, that's expressly stated in the Ishitu case from D.C. that DeMaya provided no basis for challenging the application of the categorical approach. And it isn't just that Judge Kagan said that ---- Do you think DeMaya mandates application of a categorical approach to this problem? Or is that ---- Yes, I think it's precedent that this court, its role would be to follow and not to lead on this question. We would suggest that since 16B and 924C are sort of symbiotically bound, that that interpretation has to follow. But the waiver is a significant principle that is applied routinely to defendants who try to change their argument in the middle of a case. And now the government comes forward, having argued exactly 180 degrees the opposite in the district court, and now they want to change that point of view here. Thank you, Your Honor. Thank you both.